

FILED

JUL 07 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 26 CR 360 |
| v. | ) | |
| | ) | Laura K. McNally |
| SUPPRESSED | ) | Magistrate Judge |
| | ) | |
| | ) | |

Enclosed is the following document(s),

Government's Memorandum in Support of Detention

Exhibit 1

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:  /s/ Sean Hennessy
SEAN HENNESSY
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-3482

Dated: July 6, 2026

# ORIGINAL

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 26 CR 360 |
| v. | Honorable Laura K. McNally |
| DAVID COLLINS, et al. | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION

Since approximately September 2024, law enforcement agents from Homeland Security Investigations ("HSI"), the Internal Revenue Service – Criminal Investigation ("IRS-CI"), and the Chicago Police Department ("CPD") have investigated a drug trafficking organization ("DTO") operating on the west side of Chicago. The investigation has involved many investigative techniques, including wiretapping cellular phones and intercepting communications occurring over multiple phones. The investigation has shown that the DTO, which includes but is not limited to the defendants currently before the Court, operates an open-air drug market with a significant amount of the DTO's activity occurring in the area of the 700 block of North St. Louis Avenue in Chicago. The DTO traffics huge amounts of narcotics, including primarily fentanyl and heroin and, to a lesser extent, cocaine base. The members of the DTO sell large volumes of the narcotics in user-quantity bags to consumers on the street, typically in $10 increments. The DTO has operated in a brazen fashion by selling these narcotics essentially dawn till dusk every day, with multiple members of the DTO on the street and selling the narcotics at almost all times. The nature and circumstances of the offense and the weight of the evidence

establish that the members of the DTO are a danger to the community, the potential sentences faced by members of the DTO if convicted create a risk of flight, and the government posits that there is no combination of conditions that would reasonably assure the safety of the community or the appearance of the members of the DTO at future court hearings if released. In addition, certain of the defendants under indictment before the Court have not yet been arrested. Finally, the community has suffered from the DTO's conduct and the community would further be endangered by release of the members of the DTO, based on the nature and seriousness of the DTO's conduct.

Pursuant to the Court's July 1, 2026 order regarding the Section 3142(g) factors of the nature and circumstances and weight of the evidence pertaining to the members of the DTO as to whom the Court arraigned on July 1 and July 2, 2026, the government submits the following with respect to those factors.[1]

---

[1] The indicted defendants who have appeared before the Court are David Collins, Tyrone Thomas, Barry Spires, Darius Waters, Tia Chambers, Octavius Kyles, and Essex Davis. Defendants Cortney Hanes, Deontario Prater, and Erik Miller are otherwise already in federal or state custody.

On July 1, 2026, law enforcement agents executed a number of search warrants as part of this investigation, including a search warrant at a stash house in Chicago, Illinois. After executing the search warrant, law enforcement observed one individual, Jamieane Ellis, inside the location. Law enforcement also seized multiple kilograms of suspect fentanyl, which field tested positive for the presence of fentanyl, and multiple firearms. Ellis was arrested and charged by criminal complaint under case number 26 CR 366. As described in more detail below, Ellis is a supplier to the organization and managed the stash house from where the contraband was seized.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The DTO's Narcotics Trafficking Activities

Since approximately September 2024, law enforcement's investigation of the DTO has revealed that the DTO, primarily composed of members and affiliates of the Traveling Vice Lords street gang, traffic huge amounts of fentanyl and heroin (and, to a lesser extent, cocaine based) in Chicago, and largely to street-level consumers in the area of the 700 block of North St. Louis Avenue from morning to night every day. As it relates to the defendants before the Court, the investigation has shown that (1) David Collins manages the DTO, (2) Tyrone Thomas, Barry Spires, and Cortney Hanes are entrusted with wholesale quantities of narcotics for purposes of reloading the DTO's street-level sellers as supplies run low, (3) Darius Waters procures wholesale quantities of narcotics for the DTO, (4) Deontario Prater regularly manages the street-level sellers conducting the DTO's business, and (5) Tia Chambers, Octavius Kyles, Essex Davis, and Erik Miller are street-level sellers working on the ground on behalf of the DTO.  Additionally, the investigation revealed that Jamieane Ellis was a supplier of fentanyl to the organization, and that Ellis managed a stash house in Chicago where multiple kilograms of fentanyl were stored, processed, packaged, and distributed.  As described below, law enforcement's investigation has involved conducting a huge number of controlled purchases of narcotics from members of the DTO, two seizures of bulk quantities of narcotics destined for DTO purposes, and the review of many intercepted phone calls that explicitly discuss the DTO's business. Law enforcement also recovered additional quantities of narcotics

3

and firearms during the course of the investigation, including multiple kilograms of suspected fentanyl and multiple firearms from premises searched pursuant to search warrants on July 1, 2026.

**B.      Controlled Purchases of Narcotics from Members of the DTO**

Since the initiation of the investigation, law enforcement has either conducted or directed over 180 controlled purchases of narcotics from members of the DTO. The overwhelming majority of the substances purchased tested positive for the presence of controlled substances, and the controlled purchases alone resulted in the recovery of over approximately 7,400 gross grams, including packaging, of suspected fentanyl or heroin, and over 37 grams of suspect cocaine base. The controlled purchases almost always involved the receipt of multiple baggies of user quantity narcotics. That is by design – the DTO provides narcotics in massive volumes of user-quantity servings, because the DTO's target audience is the community. Members of the community are the direct recipients of the DTO's drug trafficking activities, and the DTO's trafficking has resulted in a significant danger to the community near the area of the DTO's activities.

Law enforcement specifically conducted controlled transactions of narcotics with some of the defendants before the Court, including the following examples across a significant timeframe:

- On June 4, 2025, Tyrone Thomas provided samples of a fentanyl/heroin mix to undercover officers during a "pass out," an event during which the DTO

provided free samples of narcotics to users in an effort to turn those users into repeat customers of the DTO.

- On July 1, 2025, Octavius Kyles sold five $10 bags of fentanyl to an undercover officer.

- On November 2, 2025, Essex Davis sold three "sets" of fentanyl—two $5 bags of narcotics stapled and sold together for $10—to an undercover officer.

- On December 6, 2025, Tia Chambers sold five $10 bags of fentanyl to an undercover officer.

### C. Seizures of Bulk Quantities of Narcotics

On July 18, 2025, law enforcement seized approximately 845 grams of fentanyl destined to resupply the DTO's operations. More specifically, before the seizure, law enforcement intercepted multiple phone calls between members of the DTO, including Cortney Hanes and another defendant charged in the indictment before the Court but not yet arrested, regarding the dwindling supply of narcotics available for sale. Shortly after those calls, surveilling law enforcement officers observed Darius Waters deliver a white bag to David Collins at an address associated with Collins. Approximately an hour and a half later, surveilling officers observed Collins exit the residence with a white bag, which he delivered to Hanes in Hanes's car. Law enforcement followed Hanes and attempted to conduct a traffic stop, at which point Hanes fled from law enforcement before being apprehended shortly thereafter. Law enforcement searched Hanes's car and did not locate a white bag, but was able to approximate the path that Hanes's car took, and ultimately recovered a white bag

containing narcotics from the area of an alley, surveillance footage of which depicted Hanes's car traveling through the alley and tossing a white bag over a fence:



Law enforcement recovered the bag, the contents of which were later tested and confirmed to contain approximately 845 grams of a substance containing fentanyl. The contents were packaged consistently with narcotics that law enforcement had purchased from members of the DTO during previous interactions:



On August 1, 2025, law enforcement seized approximately 940 grams of fentanyl and heroin destined to resupply the DTO's operations. More specifically, the evening before the seizure, law enforcement intercepted a phone call between Barry Spires and Collins regarding the supply of narcotics available for the DTO's sales. During that call, Spires informed Collins of the quantity that he had remaining and asked Collins "[w]ant me to just wait till the morning or what?" Collins responded "[y]eah, I'll hit you early in the morning[.]" The next morning, surveilling officers observed Spires parked in the area of the residence associated with Collins. Shortly thereafter, surveilling officers observed Waters arrive in the same area, exit his car, retrieve a black bag from the trunk of his car, and place the black bag in Spires's car. Law enforcement followed Spires and, after he exited his car, law enforcement recovered a black bag from the center interior of Spires's car, the contents of which were later tested and confirmed to contain approximately 940 grams of fentanyl and heroin:

 

Afterwards, law enforcement intercepted phone calls, during which members of the DTO, including Collins, Tyrone Thomas, Tia Chambers, and Hanes, discussed the seizure. Specifically, Chambers reported to Collins that law enforcement had arrested Spires before Spires had been able to provide the narcotics to other members of the DTO. In a call between Collins and Thomas, Collins told Thomas that Spires "just got popped with $10,000 worth of shit[.]" Chambers later reported to Collins that she and other members of the DTO went to Spires's car and "bust[ed] the window in the car" to look for the narcotics, not knowing that law enforcement had already seized them. Collins and Hanes similarly discussed the expected quantity of the narcotics that had been in Spires's car.

### D. Samples of Intercepted Phone Calls

Law enforcement conducted six separate wiretapping periods of cell phones used by members of the DTO during its investigation, including cell phones used by Collins, Waters, Prater, and another member of the DTO charged in the indictment before the Court. During many intercepted calls, members of the DTO, including each of the defendants currently before the Court discussed, among other things, the supply of narcotics available for sale by members of the DTO, seizures of narcotics by law enforcement, law enforcement presence in the area in which the DTO largely operated, members of the DTO in the area and selling narcotics at the times of certain calls, narcotics proceeds, and the quality of the narcotics that the DTO sold. An

example intercepted call for each of the defendants currently before the Court is attached as omnibus Exhibit 1.[2]

### E.     Search Warrants

On July 1, 2026, law enforcement executed multiple search warrants regarding premises associated with the DTO's activities. Across the warrants, law enforcement seized multiple kilograms of suspected fentanyl from one location, multiple firearms, significant quantities of cash from two premises, and additional indicia of drug trafficking.

### F.     Indictment

On June 29, 2026, a grand jury returned an indictment charging the defendants before this Court with conspiracy to traffic fentanyl, heroin, and cocaine base, possession with intent to distribute narcotics, and distribution of narcotics, in violation of Title 21, United States Code, Sections 846 and 841(a)(1). On July 2, 2026, the government filed an unsealed, redacted version of the indictment with redactions for the defendants not yet arrested pursuant to the indictment.

## II.     ARGUMENT

### A.     Applicable Law

Pretrial detention is governed by the Bail Reform Act, codified at 18 U.S.C. §3142. Where, as here, a defendant is charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the [] Controlled

---

[2] Certain personally identifying information has been redacted from Exhibit 1.

Substances Import and Export Act," the Court "shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community[.]" 18 U.S.C. § 2142(f)(1)(C). As part of its analysis, the Court may consider (1) "the nature and circumstances of the offense charged," (2) the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. 3142(g). The evidentiary standard for detention on the basis that the defendant poses a threat to the community is clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); *United States v. Portes*, 786 F.2d 785 760 (7th Cir. 1985). Pursuant to 18 U.S.C. § 3142(e)(1), if the Court finds that "no condition or combination of conditions will reasonably assure [the defendant's appearance] and the safety of any other person and the community," the Court "shall order the detention of the person before trial."

**B.     The Section 3142(g) Factors Call for Detention**

Pursuant to the Court's order, this submission is limited to discussing the nature and circumstances of the DTO's activities and the weight of the evidence against the defendants currently before the Court. The government will prepare argument regarding each of the defendants' history and characteristics for each defendant's detention hearing, and will adjust its position as appropriate and as based on Pretrial Services Officer reports. Applying the Section 3142(g) factors results in a conclusion that, based on the nature and circumstances of the offense and

10

weight of the evidence, the defendants before the Court are dangers to the community and pose risks of flight given the significant sentences they face if convicted. In addition, each defendant to appear before the Court is charged with a detainable offense that carries with it a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A).

First, the nature and circumstances of the DTO's conduct reflect that the defendants pose a danger to the community. The defendants were either members or affiliates of a street gang in Chicago, and each defendant used their association to create a scourge on the west side of Chicago – the introduction of significant quantities of narcotics to the community. Not all narcotics should be weighed equally. The DTO trafficked in fentanyl, and fentanyl is a uniquely dangerous drug to place in a community. Also aggravating is the brazen nature of the DTO's conduct. The DTO offered for sale fentanyl, heroin, and cocaine base essentially all day, every day to members of the community. The DTO's conduct made the area in which it operated less safe, and the members of the DTO chose to participate in that conduct day after day. This was not aberrant conduct – the defendants' livelihoods are that of drug trafficking, and the government asks the Court to consider the prolonged nature of the conduct when considering detention. In addition, law enforcement recovered multiple firearms while executing search warrants at premises associated with the DTO. "[D]rugs and guns are a dangerous combination." *Smith v. United States*, 508

11

U.S. 223, 240 (1993). The possession of firearms in connection with drug trafficking creates "a grave possibility of violence and death[.]" *See id.*

Second, to the extent the Court considers the weight of the evidence in its analysis, the evidence is extremely strong. Among other things, law enforcement conducted six periods of wiretapping, intercepting calls over the phones of multiple of the defendants before the Court; over 180 controlled purchases of narcotics from members of the DTO; the two seizures of bulk quantities of narcotics discussed above; the installation of multiple pole cameras at locations relevant to the investigation; the use of police observation device cameras for additional surveillance; and trash pulls resulting in recovering narcotics trafficking refuse (specifically empty boxes of Dormin, a commonly used cutting agent in narcotics trafficking).

In addition, each defendant before the Court is charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 18 U.S.C. § 3142(e)(3)(A), and many of the defendants face charges with mandatory minimum sentences of ten years' or five years' imprisonment. The defendants accordingly also have an incentive to flee or fail to appear at future Court proceedings.

## III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court

consider the above as part of the detention proceedings scheduled in this case.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:  /s/ *Sean Hennessy*
SEAN HENNESSY
JONATHAN L. SHIH
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 886-3482

Dated: July 6, 2026

# Exhibit 1

## Call Report

| Call Number | Date | Time | Duration | Direction | Audio Available | Call Type | Record Flag | Target | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|
| 2193 | 05/11/2025 | 09:47:03 | 00:00:36 | Incoming | Yes | Voice | Pertinent | ███████ | ███████ | BARRY "BIG BARRY" SPIRES (NARC. STREET MANAGER. P1) |

Synopsis

Incoming Call: SPIRES calls and asks PRATER (referred to "Lil Moe") where he is. PRATER states he is going to meet with "D'" (David COLLINS) real quick. SPIRES asks PRATER if he is through with what he gave him (Referring to the narcotics batch). PRATER states that he doesn't have any and that he cleaned up (referring to sold the entire batch of narcotics). SPIRES states he has more "Packs" (narcotics packs). PRATER states he is coming. Call ends.

K.H #8454

Transcript

This is an incoming call from Barry SPIRES to Deontario PRATER:

PRATER: Yo.

SPIRES: Aye, where you go Lil Moe?

PRATER: I'm right here. I'm slide on D, real quick.

**** Background noise of unknown female stating Chicago Ave****

SPIRES: So you through what I gave you or something ?

PRATER: Yea I ain't got shit, I cleaned up.

SPIRES: I got some more packs.

PRATER: Yea, I ain't got shit. I cleaned up.

SPIRES: Aight, come on. You know these motherfuckers don't got it.

PRATER: Aight here I come.
Conversation ends.

This conversation was transcribed by K.H #8454

# Call Report

| Call Number | Date | Time | Duration | Direction | Audio Available | Call Type | Record Flag | Target | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|
| 5321 | 08/01/2025 | 10:30:52 | 00:00:36 | Incoming | Yes | Voice | Pertinent | ███████ | ███████ | CORTNEY HANES (NARC. RUNNER) |

Synopsis       Incoming:

Hanes calls Collins and asks what kind of bag it was, Collins states he never gave Barry Spires the bag that his cousin did. Hanes tells Collins it most likely was 2 bags and Collins states it might have been because his cousin said he gave Spires gave it (money) on cash app and everything, Collins tells Hanes he is trying to get a hold of his cousin but there is no answer. Haynes is relating information to UM in the background that its probably 2 black bags (Narcotics).
FD4620

I.R.S.
*Narcotics recovery documented under RD# JJ-357827

Transcript:     Incoming: Cortney HAYNES to David COLLINS.

Speaker Courtney HAYNES: hey, hey, bro

Speaker: David COLLINS: What's up bruh?

Speaker Courtney HAYNES: what kind of bags was it that you gave em.

Speaker David COLLINS: I didn't give it to him, he got up with my cousin on his own.

Speaker Courtney HAYNES: right so most likely it was like a 2 bag pack hundred though?

Speaker David COLLINS: hell ya, he said he gave him cash app and everything. On D.

Speaker Courtney HAYNES: right it was probably in like two black bags though.

Speaker David COLLINS: I'm finna call him, I called him and he ain't answerin.

Call ends.
Call transcribed by MG#21123

# Call Report

| Call Number | Date | Time | Duration | Direction | Audio Available | Call Type | Record Flag | Target | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|
| 9271 | 12/17/2025 | 16:33:40 | 00:01:34 | Outgoing | Yes | Voice | Pertinent | ████████ | ████████ | ████████████ |

Synopsis

Outgoing call: WATERS Calls ████████

WATERS refers to ████ as "cousin", ████ tells WATERS he received something from the social security board. WATERS Tells ████ he might meet with her tonight. ████ asks WATERS, "whats going on with cousin up there?". WATERS says, it's been okay, but they've complaining about the color". and "its not cheap, its the color" call ends.

SI#11534
*Narcotic discussion

Transcript

████████ : Yo, what's going on?

Darius Waters: Hey, Cousin.

████████ : I'm doing good.

Darius Waters: Not much, how you doing? I aint got no mail lately?

████████ You got something. I was just about to call you today. You got something from the social security board I think. Yup.

Darius Waters: Something from the security board?

████████ : it was out here.

Darius Waters: OK. Ima come get it.

████████ : Oh, That's why I thought you was calling.

Darius Waters: Uh, nuh huh. Shit, I woula stopped by. Nah, Nah, I woulda stopped by. Mhm, Nah, I woulda stopped by. I woulda stopped by and I aint seen my little cousin, I woulda stopped by. I kinda, I prolly think I know what that's prolly about, But I needa get it though so i know what that is definitely about. I needa get it. OK. Shit, Shit, I might come that way tonight, I aint got shit to do .

████████ : Yeah, that's, I, I was, what's going on, what's going on with Cuz and them up there. They-

Darius Waters: This traffic died down, this traffic died down. Shit. It's been ok, but they been complaining about the color.

████████ : Alright.

Darius Waters: It's not cheap, It's the color.

████████ : Alright, I need, I can see [UI]

Darius Waters: [UI] background noise.

████████ : What's his name?

Darius Waters: [UI] background noise.

████████ : Alright, If you slide by I'll holler at you.

Darius Waters: [UI] background noise.

████████ : Alright.

Call ends.

Call transcribed by Alvarez#8833

# Call Report

| Call Number | Date | Time | Duration | Direction | Audio Available | Call Type | Record Flag | Target | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|
| 5307 | 08/01/2025 | 09:40:52 | 00:01:20 | Outgoing | Yes | Voice | Pertinent | ███████ | ████████ | ██████████ |

Synopsis

Outgoing: Collins speaks to an UM and reports the arrest of Spires indicating that he had up to $8000 worth of drugs and then says that he thinks a phone might be tapped. Collins says that he's thinking about dropping both of his phones and says that he (Collins) would have to notify cuz (Darius Waters) to let him know because he was planning to go out of town for a week. Collins says that this was the second time this has happened on a Friday and that this wasn't the regular police doing this.
RB 1500

*Narcotics recovery documented under RD# JJ-357827

Transcript:

This is an outgoing call from David Collins to an Unknown male.

David Collins: Yo?

Unknown male: What's the word five?

David Collins: Unintelligible tvl yea he just got all them bundles.

Unknown male: They know they got biz.

David Collins: On Neal grave. In the car with him on Chester grave.

Unknown male: In the car wit him?

David Collins: D the man got probably eight thousand dollars worth drugs and the pass out on Neal grave. My son Lord I don't know what the fuck. I think somebody phone tapped on my dead grandma.

Unknown male: Naw.

David Collins: On Jesus Christ brother this a whole another. Another Friday again that shit happen on Neal grave. On D the gold trans Lord I'm telling. I think I I I got a feeling Lord.

Unknown male: Hmmm gold Trans.

David Collins: One of they phone spiked Lord I'm telling you Lord. I'm buy me whole nother jack. I'm finna get rid of these bitches. Cause thats the second time on a Friday Lord. On my dead grandma, I'm tweaking Lord on Neal. Fuck chinaman get right upfuck keep on coming popping up catching muthafuckers. Same fucking police Lordon Neal grave.

Unknown male: Same yea police.

David Collins: Don't even make no senseman on Neal. Yea I'm finna I got to call cuz tell him. Cuz his ass finna go out of town for a whole week on Neal. On D I'm finna call him. I'm call you back.

Unknown male: Naw. Aight.

Conversation ends.

This conversation was transcribed by CM#7248

# Call Report

| Call Number | Date | Time | Duration | Direction | Audio Available | Call Type | Record Flag | Target | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|
| 9723 | 09/16/2025 | 12:29:31 | 00:10:10 | Outgoing | Yes | Voice | Pertinent | ███████ | ███████ | ███████ |

**Synopsis**

Outgoing Call:
COLLINS and an UM talk about a reference call needed for a construction job. Call minimized. Spot check. At 04:50 both talk about how good the crack cocaine is. COLLINS mentions that he has been watching from an UM how to cook crack. The UM mentions that he uses a teaspoon on ammonia and that what makes it crack. At 02:48, the UM mentions that he is being followed by a gray Volkswagen truck and a white Mercedes Benz whenever the UM drives west. COLLINS then mentions he wants the UM to control it (sales of crack cocaine). The UM mentions that he wants too because he needs the money and continues to complain about the current DTO he is working for (unclear who the UM is currently working for). Lil Mike working on Polk (by California). Call disconnects.
K.H #8454

**Transcript:**

4:35

C: On Neal, I swear to god that bitch gonna bang. Cause I ain't gonna lie, since Unc got been... since Unc been cook my shit, I been through with 9 the whole weekend bags.

UM: Yeah?

C: Hell yeah.

UM: UI.... Ah yeah that's good.

C: Yeah, Unc making them P's say they ain't have no crack like that since the 90's, on my dead Grandma.

UM: Yeah?

C: Early 2000's... on Neal.

UM: Unc probably putting Ammonia in that shit. You prolly...

C: [UI]... I'm watching him, I just asked him yesterday man Unc you don't know how to put that Ammonia with that shit. He said yeah let it dry, he get that loud, on Neal. You know how to do that shit too cuz with the Ammonia?

UM: Yeah you just got to put a little teaspoon in there. You can't put too much. That's crack. That's what the word Crack came from. The shit with Ammonia in it. That's what they start calling... that shit came from New York.

C: I'm tryna tell you, I swear to god, I'm not making this up though. He don't be using nothing, just doing it the regular way, I be watching everything. He been tryna show me the last 3 times. I tell him, I don't want none of that shit cause I don't got [UI] to be standing over that stove, on Neal, I'm cool, on D. Like I move too much, on Neal grave. [UI], I'm tripping [UI], on Neal.

# Call Report

| Call Number | Date | Time | Duration | Direction | Audio Available | Call Type | Record Flag | Target | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|
| 10583 | 11/22/2025 | 13:16:13 | 00:01:28 | Outgoing | Yes | Voice | Pertinent | ▮▮▮▮▮ | ▮▮▮▮▮ | TYRONE "SMOOTH" THOMAS (NARC. RUNNER P1) |

**Synopsis**

Outgoing call: Collins places a call to Tyrone and instructs Tyrone Thomas not to give Tia (Tia Chambers) anything, and she can't work out there anymore. Tyrone tells Collins she (Tia Chambers) owes a tray (narcotics) too and he's (Tyrone) is going to get it. Collins tells Tyrone he gave her 8 packs this morning at 5 am before anyone came out and she (tia) told him to come out, its slow. Tyrone said he's going to get the tray (narcotics) from her then. Collins tells him to get his money from her and he (Collins) just texted her to give all her stuff to "A" ▮▮▮▮▮ and leave. He said he asked Tia "If I give little Moe (Deontario Prater) 10 packs and I give you (Tia) 8 packs and no one is outside, how did Little Moe (Prater) get finished with his his whole 10 packs and you (Tia) only sold 2 two packs, and when you (Tia) just called him at 9 something for the drugs and she didn't get the drugs at 9 so you're the one that called me (Collins) before everyone?" Collins then tells Tyrone he's going to beat her up.
MR4369

Leadership
Control

**Transcript:**

Outgoing call from David COLLINS to Tyrone THOMAS

Tyrone THOMAS: Yo Yo

David COLLINS: Don't give that bitch shit that bitch can't work out there more on my dead grandma give her Sunday not working on G baby grave the bitch talk to much lord. I'm gonna knock her ass out on Neil grave. Don't give that bitch shit

Tyrone THOMAS: Yo

David COLLINS: If I come right there on Neil grave I'm gonna do the unintelligible on G baby don't give her shit Neil grave she can't work she can get the fuck on two days like I do "BB" and them.

Tyrone THOMAS: Hey boy she owe a motherfucker a "tray" to,

David COLLINS: Lord I just get a bitch eight packs early this morning lord at five o clock before anyone mother fucker comes out side. She said two hundred dollars come out his unintelligible.

Tyrone THOMAS: Yea that bitch owes I'm gonna get that "tray" off of her

David COLLINS: On D get your money from that bitch I just take that bitch on up my shit get the fuck on on Neil grave that bitch can't sell shit out there I tell that bitch. I'm like damn how the fuck if get a little more ten packs and i give you eight pack ain't no motherfucker outside how the fuck "Lil Moe" get a whole ten you only sell two packs.
You just called me at like nine something for the drugs you wouldn't get the drugs at nine something you the one to call me before any motherfucker.

Tyrone THOMAS: Dame

David COLLINS: On G baby that bitch smack my ass call me strict boy man I'm not one of your boyfriend I'm not one of them on D bitch I'll beat your ass on my dead grandma.

Tyrone THOMAS: Unintelligible

Call ends

Call transcribed by GS #3913

## Call Report

| Call Number | Target Name | Target | Target IMSI | Date | Time | Duration | Call Type | Record Flag | Direction | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3455 | DEONTARIO "LIL MOE" PRATER (NARC. PCKWRKR. P1) | ███████ | | 06/01/2025 | 06:57:33 | 00:01:12 | Voice | Pertinent | Incoming | ████████ | ESSEX "ESE" DAVIS (NARC. PCKWRKR.) |

**Synopsis**

Outgoing Calls:
ESSEX DAVIS calls PRATER and asks for his location. PRATER states he is on his way (to 700 St. Louis). DAVIS informed PRATER that ███████████ and an unintelligible person are not over there (700 St. Louis). DAVIS states that he is calling everybody but no body is answering. PRATER states that nobody is over there. DAVIS then instructs PRATER to get there to him (referring to an unknown narcotic distributor). PRATER states he already has the drugs. DAVIS request to get narcotics from PRATER to sell. PRATER asks where DAVIS is. DAVIS states he is on his way and is on the e-way. Call ends.

K.H #8454

Mudds and tolls

**Transcript**

This is an Incoming call from Essex Davis to Deontario Prater.

Deontario Prater: Yo

Essex Davis: You on the block shorty?.

Deontario Prater: Yea I'm on the way over there right now

Essex Davis: Hey BJ and them ain't over there either

Deontario Prater: Awe shit I don't know? Huh, BJ and them ain't over there right now. Why what happened?

Essex Davis: Ain't nobody be happen cuz I'm calling in everybody they ain't here.

Deontario Prater: Yea nobody out right now.

Essex Davis: Go on and get to it with this open then.

Deontario Prater: Huh?

Essex Davis: Hey, I said go on ahead and go over there I'm on my way too.

Deontario Prater: I got some drugs thou already.

Essex Davis: Awe he didn't call, (inaudible) let me get some off that, let me get a lick

Deontario Prater: Say what?

Essex Davis: Let a brother get a lick.

Deontario Prater: Let you get a lick?

Essex Davis: Yeah

Deontario Prater: Where you at?

Essex Davis: I'm about to be on my way.

Deontario Prater: You on your way?

Essex Davis: Yeah

Deontario Prater: How far, (unknown female talking in background) how far you is?

Essex Davis: I'm coming, I'm on the e-way.

Deontario Prater: Alright bet, go ahead gang.

Essex Davis: Alright bet.

Deontario Prater: (Unknown female taking in background) Aight.

Conversation ends:

This conversation was transcribed by MC#8564

**Call Report**

| Call Number | Target Name | Target | Target IMSI | Date | Time | Duration | Call Type | Record Flag | Direction | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3675 | DEONTARIO "LIL MOE" PRATER (NARC. PCKWRKR. P1) | ▮▮▮▮▮ | | 06/04/2025 | 06:43:17 | 00:00:57 | Voice | Pertinent | Outgoing | ▮▮▮▮▮ | OCTAVIUS "MOOK" KYLES (UNCLE & NARC. ASSOC.) |

Synopsis

Outgoing: Prater called an Unknown male he refers to as "Unc", Prater asked him if BJ (▮▮▮▮▮) was right there. The UM replied yes he is right here. Prater asked him to ask BJ if he has any narcotics left? The UM is overheard in the background asking BJ if he has a set? (Narcotics) BJ replied yes. The UM told Prater that they want some more sets ($20 bags of narcotics.) The UM speaking on behalf of BJ said he doesn't have any more sets he has all saw bucks ($10 bags of narcotics.) Prater tells him to come meet him at the trap house (737 N. St. Louis) he is coming out. Call ends.
MG#21123

*Prater is observed parking at 742 N. St. Louis and parking his Sil Ford Fusion (EW82490) @ 6:39hrs. He then walked into the south gangway of 737 N. St. Louis.

Transcript

Octavius Kyles: Whaddup nephew?

Deontario Prater: Hey, Unc. Ask, uh Ask. Is BJ (▮▮▮▮▮) right there?

Octavius Kyles: Yeah, he is right here.

Deontario Prater: Ask him (BJ) if he has sets (narcotics).

Octavius Kyles: BJ! You got some sets? He said "Yeah".

Deontario Prater: Alright.

Octavius Kyles: Alright.

Deontario Prater: Alright.

Octavius Kyles: Hey they want some sets boy.

Deontario Prater: Huh?

Octavius Kyles: He say he aint got no more sets. He got all sawbucks (Narcotics).

Deontario Prater: He say he still got the two clips right? He say what?

Octavius Kyles: One set, one set.

Deontario Prater: Tell him alright, tell him come on. (Unintelligible)

Octavius Kyles: Hey, every body waiting for you shorty.

Deontario Prater: I'm coming out bro.

Call ends.

Call Transcribed by Alvarez#8833

# Call Report

| Call Number | Target Name | Target | Target IMSI | Date | Time | Duration | Call Type | Record Flag | Direction | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2192 | DEONTARIO "LIL MOE" PRATER (NARC. PCKWRKR. P1) | ███████ | | 05/11/2025 | 09:38:49 | 00:00:44 | Voice | Pertinent | Outgoing | ███████ | DAVID "D-BOY" COLLINS (NARC. ASSOC. P2) |

**Synopsis**  Outgoing Call: Deontario PRATER calls UNKNOWN MALE: UNKNOWN MALE asks if PRATER is outside (referring to 700 St. Louis). PRATER states, yea. UNKNOWN MALE asks who is out there. PRATER states, he (PRATER), "T.T" (Tia CHAMBERS), ███████ UNKNOWN MALE informs PRATER that he has an unintelligible item. PRATER asks if UNKNOWN MALE wants PRATER to come grab it. UNKNOWN MALE states yea and explains there is a little more left out there (700 St. LOUIS). UNKNOWN MALE says he is trying to call "BB" and PRATER tells UNKNOWN MALE that she is out here and when he drives by will tell her he is trying to call her. UNKNOWN MALE tells PRATER to have her call him and PRATER states he is coming. Call ends.

K.H #8454

**Transcript**  This is an outgoing call to from Deontario PRATER to David COLLINS.

COLLINS: You outside?

PRATER: Hell yea.

COLLOINS: Who all out?

PRATER: Shit. Me, T.T, Baby Al, B.B, Uhmmmm; Lil Roddey, P.J,

COLLINS: Unintelligible.

PRATER: Huh?

COLLINS: I got some clips too.

PRATER: You said strips.

COLLINS: I said I got some clips.

PRATER: You want me to come grab them?

COLLINS: Yea, hell yea. Because they got the last shit out there.

PRATER: Aight Ill get out there unintelligible.

COLLINS: Aight, come on.

COLLINS: Tell B.B I was trying to call her.

PRATER: Oh she shit, she out here standing out I'm finna tell her when I ride by I'll tell her that.

COLLINS: Aight. Tell her I said to call me.
Conversation ends.

This conversation was transcribed by K.H #8454

## Call Report

| Call Number | Target Name | Target | Target IMSI | Date | Time | Duration | Call Type | Record Flag | Direction | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5317 | DAVID "D-BOY" COLLINS (NARC. ASSOC. P1) | ▆▆▆▆ | | 08/01/2025 | 10:26:08 | 00:00:57 | Voice | Pertinent | Incoming | ▆▆▆▆ | TIA "T.T." CHAMBERS (NARC. PKWRKR.-FEM. INT. OF ABRAHAM CLAY) |

Synopsis

Incoming:

Chambers calls Collins and tells him there isn't anything in the car that they just busted the window. Collins tells Chambers that Cortney Hanes stated it was in the trunk. Chambers said they checked the trunk and that there wasn't anything in there unless he hid it in the trunk where the spare tire goes. UM in the background is captured saying there was nothing in there he went and cleared everything out and couldn't find anything. Chambers states they are going to go back and check again. Call ends.
FD4620

*POD7887W @1022hrs captures Chambers accessing Barry Spires vehicle and looking for a bag containing narcotics.
*Narcotics recovery documented under RD# JJ-357827

Transcript

Incoming: Tia CHAMBERS to David COLLINS.

Speaker David COLLINS: Yo

Speaker Tia CHAMBERS: Ya we ain't see it, we bust the window in the car.

Speaker David COLLINS: huh?

Speaker Tia CHAMBERS: I said there ain't nothing in the car, we bust the window in the car, there ain't shit in there.

Speaker David COLLINS: what about the trunk? He just told Courtney it was in there, ya'll ain't pop the trunk?

Speaker Tia CHAMBERS: We just went in the trunk and the little box back there, ain't shit in that trunk, unless he just, unless he messed the thing up back there, you know that little thing back there.

Speaker David COLLINS: on D

Speaker Tia CHAMBERS: you know the rug the part you know that could come up there's a spare tire back there too.

Speaker David COLLINS: right

Speaker Tia CHAMBERS: we ain't look in that part though

Speaker David COLLINS: the police left?

Speaker Tia CHAMBERS: but we fitten to go back right now to see if the other part of the trunk.

Speaker David COLLINS: aight

Call Ends. Transcribed by MG#21123

# Call Report

| Call Number | Date | Time | Duration | Direction | Audio Available | Call Type | Record Flag | Target | Contact ID | Contact Name |
|---|---|---|---|---|---|---|---|---|---|---|
| 3070 | 05/25/2025 | 08:16:40 | 00:00:43 | Incoming | Yes | Voice | Pertinent | ███████ | ███████ | TYRONE "SMOOTH" THOMAS (NARC. RUNNER P1) |

Synopsis

Incoming call: Thomas asks if there's anymore saw bucks? Prater tells him they should be over with (all sold) . Thomas then says to ask Tia (Chambers) if she has any, and Prater tells him she doesn't have any more either. Prater tells him he's finishing up.
MR#4369

Transcript

Incoming call: Deontario PRATER receives a call from Tyrone THOMAS

THOMAS:
Hey Moe [PRATER].

PRATER:
Yo.

THOMAS:
[Unintelligible]

PRATER:
Yeah

THOMAS:
Got anymore sawbucks [$10 bags of narcotics]?

PRATER:
Ah, nah that should be over with [all narcotics sold].

THOMAS:
See if Tia [CHAMBERS] has anymore.

PRATER: Hell no, she at the crib [house]. I ain't really got no more [narcotics] either. But I'm finna dip [unintelligible] I'm tired of sittin' out here [at the drug spot].

THOMAS:
Hell yeah, come on [unintelligible ] with it.

PRATER:
Aight, I'm finna um I'm gonna figure uh [unintelligible]

THOMAS:
Yeah.

PRATER: Aight, I'm finna [unintelligible]

THOMAS:
Aight,

PRATER:
Aight.

Call ended

Call transcribed by D. Belcher #10571